UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW SINGLETON and MYRA F. SINGLETON,<br><br>Plaintiffs,<br><br>v.<br><br>FREEDOM MORTGAGE CORPORATION, DHI MORTGAGE COMPANY, LTD., LP.,<br><br>Defendants. | No. 2:25-cv-2030 DJC AC PS<br><br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs are proceeding in this matter pro se and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). This case was removed to federal court on July 21, 2025. ECF No. 1. Defendant Freedom Mortgage Corporation filed a motion to dismiss. ECF No. 13. Plaintiffs did not oppose the motion, and the undersigned vacated the hearing and issued an order to show cause why the case should not be dismissed for failure to prosecute. ECF No. 18. In response to the order to show cause, plaintiffs filed a notice indicating that they intend to pursue this case, but they did not respond substantively to the motion to dismiss, stating only that they would make their argument in court, even though the hearing had been vacated. ECF No. 24. In light of plaintiffs' pro se status, the court will give plaintiffs a final opportunity to file a written, substantive opposition to the motion to dismiss. It is ORDERED that plaintiffs shall file their opposition, in writing, within 21 days of this order.

1

Separately, plaintiffs filed a motion to remand this case to state court. ECF No. 17. Defendants oppose the motion to remand. ECF No. 21. Because the court concludes that diversity jurisdiction is satisfied, it is recommended that the motion to remand (ECF No. 17) be DENIED.

## I. The Complaint

Plaintiffs filed this action to challenge foreclosure proceedings against the real property located at 9840 Carico Way, Elk Grove, California ("the Property"). ECF No. 1-1 at 5. On or about January 14, 2016, plaintiffs obtained a loan (the "Loan") from DHI Mortgage Company, LTD., L.P. ("DHI") in the original principal sum of $405,461.00, which was reflected in a promissory note secured by a deed of trust (the "Deed of Trust") encumbering the Property. ECF No. 1-1 at ¶¶ 10(a), 11; Ex. A. Freedom Mortgage ("Freedom") is the assignee of the Deed of Trust and servicer of the Loan. See Request for Judicial Notice (ECF No. 14) Ex. 1; ECF No. 1-1 at ¶ 11(b)).

Plaintiffs filed for Chapter 13 bankruptcy in 2018, during which time they consistently made their monthly payments on the Loan to the bankruptcy trustee, who distributed the payments to the servicer on their behalf. Id. at ¶ 11(b). Plaintiffs received a discharge on February 5, 2024. Id. at ¶ 11(c). Plaintiffs allege the amount of their monthly payments thereafter adjusted to $2,792.60, effective June 1, 2024, and that they nevertheless "consistently paid the greater sum of…$2,877 [through] certified checks." Id. at ¶ 11(d). Plaintiffs allege they contacted Freedom on November 20, 2024, after receiving no confirmation that their payments had been properly applied, and were told that "no payments had been processed" but Freedom failed to provide any explanation for the failure. Id. at ¶ 11(e). Plaintiff Myra Singleton explicitly informed the representative of Freedom of the bankruptcy discharge that had occurred in February of 2024 and submitted copies of the discharge documentation, demanding Freedom properly credit all payments made post discharge. Id.

To further substantiate their timely payment history, plaintiffs sent Freedom certified copies of their bank statements and the certified checks themselves, documenting every payment made. Id. at (f). Despite these efforts, Freedom failed to acknowledge receipt or provide any

updates regarding the application of payments to plaintiffs' mortgage account. Id. Plaintiff Myra Singleton made a follow-up call in December of 2024, but was only met with conflicting account statements reflecting varying amounts due and no resolution to the ongoing discrepancy concerning her payments. Id.

On January 6, 2025, plaintiffs received an official Notice of Default from Freedom alleging that the loan was in default due to missed payments spanning from August 2024 to the present. Id. at (g). The notice stated an outstanding balance due of $14,876.18, contradicting plaintiffs' consistent payment record. Id. Plaintiffs subsequently received another statement from Freedom Mortgage indicating an increased outstanding balance of $16,805.60 due as of February 1, 2025, despite no change in plaintiffs' payment behavior. Id. at (h). Plaintiffs maintain and state that they have complete proof that they never missed a single mortgage payment during the referenced period. Id. at (i).

On March 25, 2025, plaintiffs submitted a comprehensive complaint to the Consumer Financial Protection Bureau detailing Freedom Mortgage's repeated failure to credit payments despite substantial proof of payment and ongoing harassment through erroneous notices and foreclosure threats during and after the bankruptcy period. Id. at (l). On the same date, plaintiffs received an unexpected letter from Defendant claiming that a certified check (Check No. 8282) for the March 2025 payment could not be processed due to insufficient funds. Id. at (m). Plaintiffs contested this, asserting that the bank would not have issued a certified check without first verifying that the account had sufficient funds to cover the payment, but Freedom refused to cash the check and instead returned it, citing that plaintiff's home was in pre-foreclosure status. Id.

On March 28, 2025, a Notice of Default was sent to plaintiffs, stating a purported outstanding balance of $15,242.38 and advancing foreclosure proceedings. Id. at (o). In response, through their counsel Madden and Associates, LLP, plaintiffs issued a Formal Demand to Cease Foreclosure Activity and Correct Mortgage Errors, explicitly reiterating plaintiffs' continuous payments even during bankruptcy and categorizing the letter as a qualified written request under applicable mortgage servicing regulations. Id. at (p). Freedom did not respond. Id.

1  In April of 2025, Freedom Mortgage sent a statement reflecting an increased balance of
2  $19,525.05 due as of May 1, 2025.  Id. at (q).
3       On June 18, 2025, plaintiffs commenced this action by filing the complaint in the
4  Sacramento County Superior Court, asserting causes of action for (1) violation of California Civil
5  Code § 2923.5; (2) violation of California Civil Code § 2924.17; (3) breach of contract; (4)
6  breach of the covenant of good and fair dealing; (5) fraudulent misrepresentation; (6) negligent
7  misrepresentation; (7) fraudulent concealment; (8) violation of Business & Professions Code §
8  17200, et seq.; (9) quiet title; (10) slander of title; and (11) accounting.  ECF No. 1-1.  On July
9  21, 2025, Freedom removed the action to this Court on the basis of diversity jurisdiction pursuant
10 to 28 U.S.C. §1332.  Id.  Plaintiffs seek damages, but the complaint does not assert a specific
11 amount in controversy.  Id. at 36.  Plaintiffs seek an order preventing the sale of the Property at a
12 trustee sale and a declaration of rights of the parties relative to the Property, including a quiet title
13 ruling in their favor.  Id.

## II. Motion to Remand

15      Plaintiffs move to remand this case to state court, asserting there is no diversity
16 jurisdiction because the amount in controversy does not exceed $75,000.00.  ECF No. 17 at 4.
17 "Cases filed in state court may be removed to federal court if the federal court would have had
18 original jurisdiction."  Olmos v. Residential Credit Sols., Inc., 92 F. Supp. 3d 954, 956 (C.D. Cal.
19 2015).  "Federal courts are courts of limited jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of
20 Am., 511 U.S. 375, 377 (1994).  In 28 U.S.C. §§ 1331 and 1332(a), "Congress granted federal
21 courts jurisdiction over two general types of cases: cases that "aris[e] under" federal law, § 1331,
22 and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of
23 citizenship among the parties, § 1332(a).  These jurisdictional grants are known as "federal-
24 question jurisdiction" and "diversity jurisdiction," respectively.  Home Depot U. S. A., Inc. v.
25 Jackson, 587 U.S. 435, 437 (2019).
26      Diversity jurisdiction "requires complete diversity of citizenship; each of the plaintiffs
27 must be a citizen of a different state than each of the defendants."  Morris v. Princess Cruises,
28 Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).  In addition to demonstrating complete diversity, the

4

removing party must also prove "by a preponderance of the evidence" that the amount in controversy requirement is met. Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir.1997). This requires the removing defendant to show that it is "more likely than not" that the amount in controversy is satisfied. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir.1996). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).

Plaintiffs do not dispute that the parties are diverse, but argue that the amount in controversy requirement is not met because the complaint does not allege a specific amount in controversy, and plaintiffs do not allege the subject loan should be forgiven or voided. ECF No. 17 at 8. Instead, plaintiffs argue that they only seek to have mortgage payments that they made applied to the subject loan, and the amount of those payments falls far below $75,000. ECF No. 17 at 8. Defendants argue that the amount in controversy is the value of the Property, $405,461.00. ECF No. 21 at 2. Defendants cite to a footnote from Chapman v. Deutsche Bank National Trust Company, which explains the legal basis for defendants' position and reads, in relevant part:

> "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir.2002) (per curiam) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). Here, the object in litigation is the Property, which was assessed at a value of more than $200,000, and therefore satisfies the amount-in-controversy requirement. See Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir.1973) (treating entire value of real property as amount in controversy in action to enjoin foreclosure sale); Woodside v. Ciceroni, 93 F. 1, 4 (9th Cir.1899) ("In a suit to quiet title, or to remove a cloud therefrom, it is not the value of the defendant's claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends.").

651 F.3d 1039, 1045 (9th Cir. 2011), certified question answered sub nom. Chapman v. Deutsche Bank Nat'l Tr. Co., 129 Nev. 314, 302 P.3d 1103 (2013).

The undersigned is unpersuaded by plaintiffs' arguments that the complaint "does not specify any amount" and that the amount in controversy is under $75,000.00 because they do not

contend the loan amount is invalid. ECF No. 17 at 7-8. As the authorities cited by the <u>Chapman</u> court make clear, the amount in controversy is determined by the value of the Property. It is equally clear that the actual amount at issue controls, regardless of whether plaintiffs formally declare an amount in controversy in the complaint. Accordingly, because the parties are diverse and the amount in controversy is over $75,000, this court should retain jurisdiction and the motion to remand (ECF No. 17) should be DENIED.

### III.  Conclusion

Plaintiffs are ORDERED to respond substantively, in writing, to defendants' motion to dismiss (ECF No. 13) within 21 days of this order. Failure to comply with this order will result in a recommendation of dismissal of this case without prejudice for failure to prosecute.

Further, the undersigned RECOMMENDS that plaintiffs' motion to remand (ECF No. 17) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 1, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE